AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| INFORMATION ASSOCIATED WITH FACEBOOK USER ID 100000716769503 THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | ) ) ) |

Case No.  **3:19 mj 505**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the ___Northern___ District of ___California___ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(3) | Possession of a firearm by an unlawful user of a controlled substance or by a person addicted to a controlled substance |
| 18 U.S.C. § 922(a)(6) | false statement regarding firearms |
| 18 U.S.C. § 924(a)(1)(A) | false statement regarding firearms |
| 18 U.S.C. § 1001 | false statement |
| 21 U.S.C. § 844 | unlawful possession of a controlled substance |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

P. Andrew Gragan, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:     08/14/2019

_____
*Judge's signature*

City and state:  Dayton, Ohio

Hon. Michael J. Newman, U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to information associated with the Facebook, Inc. User ID
100000716769503 (www.facebook.com/connor.betts.98; display name "Connor Betts") that is
stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company
headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.** **Information to be disclosed by Facebook, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d) All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification

numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)    All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)    All other records and contents of communications and messages made or received by the user, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)    All "check ins" and other location information;

(h)    All IP logs, including all records of the IP addresses that logged into the account;

(i)    All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)    All information about the Facebook pages that the account is or was a "fan" of;

(k)    All past and present lists of friends created by the account;

(l)    All records of Facebook searches performed by the account;

(m)    All information about the user's access and use of Facebook Marketplace;

(n)    The types of service utilized by the user;

(o)    The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

2

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within **fourteen** of service of this warrant.

II.    **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of

- **18 U.S.C. § 922(g)(3)**
- **18 U.S.C. § 922(a)(6)**
- **18 U.S.C. § 924(a)(1)(A)**
- **18 U.S.C. § 1001**
- **21 U.S.C. § 844**

involving **Conner BETTS** since **September 2006**, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) Possession, use, acquisition, and distribution of firearms, ammunition, and controlled substances;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law

4

enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID 100000716769503 THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | Case No. _____<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, P. Andrew Gragan, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by **Facebook Inc.** ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), Cincinnati Division. I have been employed as a Special Agent with the FBI since May 2016. I have received training in national-security investigations and criminal investigations, and I have conducted investigations related to international terrorism, white-collar crimes, drug trafficking, public corruption, firearms, and violent crimes. As part of these investigations, I have

participated in physical surveillance and records analysis, worked with informants, conducted interviews, served court orders and subpoenas, and executed search warrants.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(g)(3) (Possession of a firearm by an unlawful user of a controlled substance or by a person addicted to a controlled substance), 18 U.S.C. § 922(a)(6) (false statement regarding firearms), 18 U.S.C. § 924(a)(1)(A) (false statement regarding firearms); 18 U.S.C. § 1001 (false statement), and 21 U.S.C. § 844 (unlawful possession of a controlled substance), have been committed by **Conner BETTS** ("**BETTS**").  There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## PROBABLE CAUSE

1.     On or about August 4, 2019, at approximately 1:00 a.m., Dayton Police Officers responded to an active shooter in the 400 block of East Fifth Street in Dayton, Ohio. Officers observed a male, later identified as **BETTS**, actively engaged in shooting into a crowd of individuals located at the 400 block of East Fifth Street in Dayton, Ohio, a city in the Southern District of Ohio.

2.     The Officers were able to return fire towards the suspect in order to stop the threat.  Multiple shots were fired, and **BETTS** was killed.  At this time ten (10) people, including **BETTS**, are deceased resulting from the shooting, along with multiple individuals injured. The

2

injured were transported to multiple local area hospitals. **BETTS** was located on the scene wearing body-armor and headphones. Officers were able to identify the weapon as an assault rifle style firearm.

3.      In the morning hours of August 4, 2019, the FBI was able to identify the shooter at the scene based on finger prints. The shooter was identified as **BETTS.**

4.      On or about August 4, 2019 a Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Firearms Trace was conducted on the firearm used by **BETTS**, further described as an Anderson AM-15 5.56mm with serial number 18309695. The purchaser was **Connor Stephen BETTS**, with an address of 2250 Creekview Place, Bellbrook, Ohio, date of birth (DOB) of October 28, 1994, and a Social Security Number (SSN) with the last four digits of 6211. Ohio Bureau of Motor Vehicle (BMV) records reflect the same address, DOB, and last four digits of the SSN for **BETTS.**

5.      Records obtained from a Dayton area Federal Firearm Licensed dealer included an ATF Form 4473, which based on my training and experience I know is required in order to complete the transaction of purchasing a firearm from a licensed dealer, for an Anderson Mfg model AM-15 receiver with serial number 18309695, which, based on information provided by ATF, was manufactured outside the state of Ohio. The transferee/buyer was listed on the ATF Form 4473 as **Connor Stephen BETTS** with the aforementioned address, DOB, and SSN. The transfer of the firearm from the dealer to **BETTS** was completed on April 12, 2019.

6.      Box 11e of ATF Form 4473 states, "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance? Warning: The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state

3

where you reside." The form contained warnings concerning the consequences of answering the questions on the form falsely. **BETTS'** Form 4473 was checked "No" in response to the question in box 11e.

7.      Records from the same FFL dealer also showed an ATF Form 4473 for a Taurus Pt.111 G2C 9mm pistol with serial number TLR08219 was purchased by **BETTS** on November 23, 2018. The response to box 11e was checked "No."

8.      On or about August 4, 2019, Dayton Police Officers executed a search warrant, issued by the Dayton Municipal Court, on a 2007 Toyota Corolla bearing Ohio license plate number GNM1586. The vehicle was parked near the scene of the shooting and is believed to have been used by **BETTS** for transportation to the scene and for storage of the weapon he used in the shooting. Ohio BMV records show **BETTS'** father as the registered owner. Among other items, officers recovered a H&R 12 gauge Pardner Pump shotgun.

9.      On or about August 4, 2019 an ATF Firearms Trace was conducted on the shotgun, further described as a Hawk Industries Inc. H&R Pardner Pump 12 gauge shotgun with serial number NZ897689. The purchaser was **Connor Stephen BETTS**, with an address of 2250 Creekview Place, Bellbrook, Ohio, date of birth (DOB) of October 28, 1994, and last four of Social Security Number (SSN) 6211, identifying information consistent with the aforementioned BMV and other records.

10.      Records obtained from a Dayton-area Federal Firearm Licensed (FFL) dealer included an ATF Form 4473 for a H&R Pardner 12 gauge shotgun with serial number NZ897689. The transferee/buyer listed on the ATF Form 4473 was **Connor Stephen BETTS** with the aforementioned address, DOB, and SSN. The transfer of the firearm from the dealer to

4

**BETTS** was completed on June 21, 2019. **BETTS'** Form 4473 was checked "No" in response to the question in box 11e.

11.     On or about August 4, 2019, **BETTS'** corpse was taken to the Montgomery County Coroner for autopsy. During the autopsy, Dayton Police Officers removed property from the pockets of **BETTS,** including an approximate three inch long black straw with a baggie attached to the end of it by a rubber band. Inside the baggie was a white powder, which the seizing officers, based on their training and experience, believe to be cocaine based on its appearance. The suspected cocaine was submitted to the Miami Valley Regional Crime Lab (MVRCL) for testing.  MVRCL reported, on or about August 9, 2019, that the substance was cocaine.

12.     On or about August 4, 2019, the FBI observed Facebook account, 100000716769503, with uniform resource locater (URL) www.facebook.com/connor.betts.98, under display name "Connor Betts" (hereinafter referred to as **ACCOUNT**).  Screenshots were captured prior to Facebook disabling the **ACCOUNT**. Examples of the screenshots are provided below:



13. The individual pictured above and who appears in the other screenshots appears to be **BETTS** based a comparison with the known BMV photograph of **BETTS.**

14. On or about August 4, 2019, a preservation request was submitted to Facebook for the **ACCOUNT**.

15. On or about August 4, 2019, the FBI interviewed a friend of **BETTS,** who was with **BETTS** at the scene of the shooting and was shot and wounded by **BETTS**, and who for the purpose of this affidavit will be referred to as C.B. C.B. advised that around July 26 to 28, 2019, **BETTS** indicated to C.B. that he had relapsed with cocaine and it was not interacting well. C.B. also stated that **BETTS** had also invited him to go the range and shoot his AR, which C.B. did not do.

16. On or about August 4, 2019, a large national retail store, with a Federal Firearms License to deal in firearms, provided information to the FBI of weapon purchases made by **BETTS.** The weapons are further described as an H&R 1228 Pardner 12 gauge shotgun with serial number NZ682493, purchased on May 31, 2013; a DPMS Panther Arms, Inc, M4 Sportical .223-5.56 caliber rifle, with serial number L4017969, purchased on November 26, 2013; and a Mossberg 702 Plinkster 22LR rifle with serial number EML4019811, purchased on May 3, 2015. Records obtained from the retail store included ATF Form 4473s for all three firearms. Box 11e was checked "No" on all three Form 4473s.

17. On or about August 5, 2019, the FBI interviewed a high school girlfriend of **BETTS,** who for the purpose of this affidavit will be referred to as H.S. H.S. dated **BETTS** off and on in high school. She advised the FBI that **BETTS** had abused a number of drugs, including Adderall, Xanax, cocaine, and marijuana. H.S. indicated that **BETTS** purchased pills and cocaine from a manager at the restaurant **BETTS** worked at that time. H.S. advised that

**BETTS** had told others he could sell cocaine to them, and that during 2013 to 2014, **BETTS** talked about having hallucinations and feeling like bugs were under his skin.

18. On or about August 5, 2019, the FBI interviewed another former, but more recent girlfriend of **BETTS**, who for the purpose of this affidavit will be referred to as C.J. C.J. knew **BETTS** since at least January 2019, having been classmates at a local college. C.J. dated **BETTS** from at least March 2019, until they severed their relationship in or about May 2019. C.J. indicated that **BETTS** was previously addicted to methamphetamine and was a recovering meth addict. **BETTS** had told her he quit "cold turkey" after going on vacation with his family and he was unable to obtain illegal narcotics.

19. On or about August 4 to 7, 2019, the FBI interviewed multiple individuals associated with **BETTS**. A co-worker, who for the purpose of this affidavit will be referred to as N.G., advised he was aware **BETTS** used to have a methamphetamine addiction approximately three years ago. A co-worker, who for the purpose of this affidavit will be referred to as K.G., advised that **BETTS** had told K.G. that he used to have a drug abuse problem during high school. When K.G. asked what type of drugs **BETTS** was abusing, **BETTS** mentioned huffing and cocaine. A bandmate of **BETTS,** who for the purpose of this affidavit will be referred to as J.C., advised that **BETTS** had told J.C. he used to use methamphetamine. A co-worker of **BETTS,** who for the purpose of this affidavit will be referred to as C.W., advised that **BETTS** had done methamphetamine in the past. C.W. believed **BETTS** had been clean for approximately four years. A co-worker of **BETTS,** who for the purpose of this affidavit will be referred to as A.G., believed that **BETTS** had a history of drug abuse.

20. On or about August 7, 2019, the FBI interviewed an acquaintance of **BETTS,** who for the purpose of this affidavit will be referred to as J.E. J.E. indicated that he and **BETTS**

hung out at least once a month from 2014 through 2017. J.E. indicated that **BETTS** was hardly ever sober during this time and used heroin, cocaine, methamphetamine, and prescription narcotics. J.E. said that **BETTS** would often show up to his home "messed up."

21.     On or about August 7, 2019, the FBI interviewed a former co-worker of **BETTS**, who for the purpose of this affidavit will be referred to as E.S. E.S. advised that on or about August 2, 2019, at approximately 4:45p.m., **BETTS** came into her place of employment and bought a beer. Before he left, **BETTS** made the comment, "I just popped a xanny, we'll see how it goes." Based on my training and experience, I know that the term "xanny" is often used as street terminology for Xanax, a controlled substance.

22.     On or about August 7, 2019, the FBI interviewed an acquaintance of **BETTS**, who for the purpose of this affidavit will be referred to as J.E. J.E. advised that during the timeframe he and **BETTS** were acquainted, which was late 2018, J.E. believed **BETTS** was using various drugs, including cocaine, methamphetamine, heroin, and molly.

23.     On or about August 8, 2019, the FBI interviewed a friend of **BETTS**, who for the purpose of this affidavit will be referred to as E.K.  E.K. informed the FBI that he and **BETTS** had done "hard drugs," marijuana, and acid together four to five times a week during 2014 to 2015.

24.     On or about August 8, 2019, E.K. was interviewed again by the FBI. E.K. acknowledged his purchase for **BETTS** of the following items used by **BETTS** in the August 4, 2019 shooting in Dayton:  (1) body armor, (2) upper receiver of the AM-15 weapon, and (3) the 100-round double drum magazine.  E.K. indicated that he purchased these items for **BETTS** – and stored them in E.K's apartment – to assist **BETTS** in hiding them from **BETTS'** parents. E.K. indicated that approximately 10 weeks ago while in E.K.'s apartment, E.K. watched and

8

helped **BETTS** assemble the AR-15 weapon used by **BETTS** in the August 4, 2019 shooting in Dayton. E.K. indicated that upon arrival of the drum magazine approximately 6 to 8 weeks ago, **BETTS** retrieved the assembled weapon, including the drum magazine, and took possession of it and the body armor at that time.

25.    E.K. also informed the FBI that he and **BETTS** used a messaging application other than Facebook to communicate. E.K. advised that **BETTS** also utilized Facebook and other social media platforms. E.K. and another individual, believed to be C.B., in the following an April 9, 2016 photograph, screenshotted from the **ACCOUNT**, with **BETTS** (E.K. and C.B.'s faces in the photo have been obscured by the FBI):



26.    On or about August 9, 2019, the FBI interviewed a friend of **BETTS,** who for the purpose of this affidavit will be referred to as J.B. J.B. advised that **BETTS** had a very dark mind

and often discussed dark sexual fantasies. J.B. said the majority of these conversations with **BETTS** were online utilizing Facebook and a separate messaging application not affiliated with Facebook. J.B. said **BETTS** confided with him and openly spoke about the "dark" thoughts via Facebook and the separate messaging application.

27. On or about August 12, 2019, FBI agents observed a screenshot provided to the FBI of a purported 2012 Facebook post by **BETTS'** father of an article entitled "Double Barrel Handgun Means You Only Have To Be Half as Accurate," bearing a picture of part of a handgun. The purported post had the text above the article: "Connor Betts, this one's for you."

28. Based on my training and experience, I am familiar with the process by which individuals purchase, obtain, possess, and sell firearms and ammunition, and how they obtain, possess, sometimes grow, and use controlled substances. I know that individuals engaged in these activities often utilize Facebook and other social media platforms and websites to communicate, including purchasing and planning the purchase of firearms and drugs, arranging the subsequent sale and distribution of firearms and drugs, and discussing the use thereof. I also know that individuals engaged in illegal activity often maintain multiple social media accounts.

29. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook was founded in February 2004 and began public operations to individuals over 13 years old having a valid email address in September 2006. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

30. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include

10

the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

31.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

32.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

33.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In

11

addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

34. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

35. Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

36. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

37.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

38.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

39.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

40.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

41.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

42.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

13

43.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

44.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic

14

context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

45.    Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

46.    I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

15

## CONCLUSION

47.      Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

48.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

49.      Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

P. Andrew Gragan
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on August 14, 2019, in Dayton, Ohio

Hon. Michael J. Newman
UNITED STATES MAGISTRATE JUDGE

16

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to information associated with the Facebook, Inc. User ID

100000716769503 (www.facebook.com/connor.betts.98; display name "Connor Betts") that is

stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company

headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be disclosed by Facebook, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)    All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification

numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)    All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)    All other records and contents of communications and messages made or received by the user, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)    All "check ins" and other location information;

(h)    All IP logs, including all records of the IP addresses that logged into the account;

(i)    All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)    All information about the Facebook pages that the account is or was a "fan" of;

(k)    All past and present lists of friends created by the account;

(l)    All records of Facebook searches performed by the account;

(m)    All information about the user's access and use of Facebook Marketplace;

(n)    The types of service utilized by the user;

(o)    The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

2

(p) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within **fourteen** of service of this warrant.

3

II.   **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of

- **18 U.S.C. § 922(g)(3)**
- **18 U.S.C. § 922(a)(6)**
- **18 U.S.C. § 924(a)(1)(A)**
- **18 U.S.C. § 1001**
- **21 U.S.C. § 844**

involving **Conner BETTS** since **September 2006**, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) Possession, use, acquisition, and distribution of firearms, ammunition, and controlled substances;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law

4

enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.